# CLEVELAND v. HARRIES.

OFFICERS; NEGLIGENCE; PROXIMATE CAUSE; MILITIA.

1. The commanding officer of the National Guard of the District of Columbia is not personally liable for the alleged negligent drowning of an enlisted man in the naval battalion of the National Guard, while he was steering a launch in a tow of a vessel of the battalion while on a cruise, when the immediate cause of the accident was the negligent failure of the master and first officer of the vessel to release the launch when it began to yaw and rock, and the commanding officer was not on board, and the only negligence charged against him is that he had recommended such officers for appointment by the President, without their having been elected by the enlisted men of their company and having passed an examination as to their qualifications, and that he had selected them, with knowledge of their incompetency, to take charge of the vessel.

2. An officer of the government, to whom is allowed much greater latitud' in the performance of his official duty than is accorded a private individual, cannot be held liable for an honest mistake in judgment, no matter how fatal the mistake may prove.

No. 1896.   Submitted December 2, 1908.   Decided December 22, 1908.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia for one of several defendants in an action for the alleged negligent killing of plaintiff's intestate, a demurrer by such defendant to the declaration having been previously sustained and the plaintiff having elected to stand upon his declaration.     *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment rendered in an action brought by appellant, William G. Cleveland, plaintiff below, as

administrator of the estate of Melvin L. Cleveland, deceased, for damages sustained by the drowning of plaintiff's intestate in the Potomac river. The action was brought against the appellee, George H. Harries, brigadier general, commanding the National Guard of the District of Columbia, William E. Bloe, navigating officer, and Frank S. Durston, ensign, respectively, of the Naval Battalion of the District National Guard. The deceased was an enlisted man in the Naval Battalion, and the accident occurred while he was on duty as a member of the crew on a vessel on the Potomac river. The act of Congress relating to the organization of the militia of the District of Columbia, among other things, provides:

"Sec. 19. That all officers shall be commissioned by the President of the United States. In time of peace, or when not in the service of the United States, they shall previously be elected or nominated as hereafter provided. No person commissioned as an officer shall assume such rank, or enter upon the duties of the office to which he may be commissioned, until he has accepted such commission and taken such oath or affirmation as may be prescribed.

"Sec. 20. That the staff officers of a regiment or battalion shall be nominated by the permanent commander thereof.

"Sec. 21. That field officers of regiments or battalions shall be nominated by the commanding general. Captains and lieutenants of companies shall be elected by the written votes of the enlisted men of the respective companies.

"Sec. 22. That elections of officers shall be ordered and held under such regulations as may be prescribed by the commanding general.

"Sec. 23. That every person accepting an election or nomination as an officer shall appear before an examining board to be appointed by the commanding general, which board shall examine said officer as to his military and other qualifications. If any officer shall fail to appear before the board of examination within thirty days after being notified, or shall fail to pass a satisfactory examination, the fact shall be certified by the board to the commanding general, who shall thereupon declare

the election or nomination of such officer null and void. If, in the opinion of the board, such officer is competent, and otherwise qualified, they shall certify the fact to the commanding general, who shall thereupon recommend him to the president for a commission." [25 Stat. at L. 775, chap. 328.]

It is also provided by an act of Congress approved August 3, 1894, "that the Secretary of the Navy be, and is hereby, authorized and empowered to loan temporarily to any State, upon the written application of the governor thereof, a vessel of the Navy, to be selected from such vessels as are not suitable or required for general service, together with such of her apparel, charts, books, and instruments of navigation as he may deem proper; said vessel to be used only by the regularly organized naval militia of the State for the purposes of drill and instruction." [28 Stat. at L. 219, chap. 192, U. S. Comp. Stat. 1901, p. 1055.]

It is alleged in the declaration filed below that the defendants Bloe and Durston were recommended by appellee for appointment in violation of the provisions of the above statute, in that they had not been elected as therein required, nor had a military examining board certified to their qualifications for the positions to which they were appointed by the President. It is then alleged that appellee ordered the U. S. S. Oneida, a steam yacht loaned by the Navy Department of the United States to the Naval Battalion of the District of Columbia, under the provisions of the act above quoted, to be taken on a cruise down the Potomac river; that he, knowing that defendants Bloe and Durston were not competent to take charge of said vessel, ordered and directed Bloe to act in the capacity of master or commander of the vessel and Durston to act in the capacity of first officer. It is further alleged "that the defendant Harries, purely for his own personal gratification and pleasure, personally ordered, directed, and commanded to be taken or towed along with the said U. S. S. Oneida, on the cruise aforesaid, at the time aforesaid, a small speed launch, the property of the Naval Battalion of the National Guard of the District of Columbia." It is then charged that it was the duty of appellee to see that

the launch was sufficiently staunch and so constructed and so attached as to be safely towed behind the said vessel.

The declaration then alleges at considerable length, and in great detail, that, owing to the defective manner in which the launch was attached to the vessel and the careless and negligent manner in which the vessel was handled, the accident here in question resulted. The deceased, it is alleged, had been ordered by Bloe and Durston to go on board the launch for the purpose of steering it, and was so engaged, in obedience to orders, when the accident happened. In one count of the declaration, appellee is charged with taking the vessel on a practice cruise down the Potomac river, and, in another count, with having ordered the trip for his own gratification and pleasure. In the court below, appellee and Durston demurred to the declaration, and the court sustained the demurrer as to appellee and overruled it as to Durston. Plaintiff elected to stand upon his declaration, and judgment was entered accordingly. The case comes here as to appellee Harries alone.

*Mr. Rossa F. Downing* and *Mr. George A. Berry* for the appellant.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia; *Mr. Stuart McNamara,* Assistant, and *Mr. W. S. Hodges,* Judge Advocate General, D. C. N. G., for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is sought to attach liability to appellee on the ground that he was negligent in placing Bloe and Durston in charge of the vessel. He is charged with knowledge of their alleged incompetency to properly manage the vessel. It is sought to charge the disaster to the negligence of appellee, basing the allegation upon his action in ignoring the requirements of the statute when he recommended Bloe and Durston for appointment. It is unnecessary to pursue this contention any further, for it is clearly

too remote to constitute the proximate cause of the accident. Bloe and Durston are charged in the declaration with the safe conduct of the vessel. The specific allegation is as follows: "And it was also the duty of said Bloe and the duty of said Durston, respectively, as officer in command and as first officer, as aforesaid, to see to it that said launch was sufficiently staunch, able, and so constructed as to be towed in safety; and that the tow line was rigged in a lawful, proper, and seamanship manner; and to see to it that said launch was provided and equipped with the proper lights as required by law (to be used in case of distress, or to indicate distress), and that all other lights required by law were aboard said launch, in position and lighted; that the speed of the ship was neither too fast nor too slow; that the ship was held on a straight course, and not so handled, directed, and navigated as to yaw; that the tow line was neither too short nor too long, and so rigged as to cause the launch to follow in the wake of said Oneida; that the line was so made fast as to be able to be let go in an emergency, and that the proper means were provided for severing said line in case of emergency from said launch, and that a lookout properly instructed as to his duties was stationed at the taffrail of said Oneida with the means of severing said line in case of emergency, and that said launch was provided and equipped with life preservers for the preservation of the life or lives of those who may be compelled to handle, direct, or steer said launch, and that all other proper and necessary precautions were taken to preserve the life or lives of those who would be required to handle, man, steer, and direct the said launch." It does not appear from the record that any of the things charged as directly causing the accident were done by the order of appellee, or even with his knowledge. The specific charge in the declaration, as above quoted, is one of negligence on the part of Bloe and Durston. The accident was caused by failing to release the launch or stop the boat when it began to yaw and rock. This charges negligence, not against appellee, but the other defendants. The failure to connect appellee with this act of alleged negligence, either by his presence at the time, or by an order to proceed in

this negligent and reckless manner, or with knowledge and approval of a custom on the part of his subordinate officers to so manage the boat in the manner in which it was being run at the time of the accident, we think, is sufficient to relieve him of any liability.

It is only necessary for us to inquire whether or not any of the acts of appellee were such as to connect him proximately with the accident in question. "Proximate cause" is a legal term difficult to define. As said by the court in *Milwaukee & St. P. R. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. ed. 256: "The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or, as in the oft-cited case of the squib thrown in the market place. *Scott* v. *Shepherd,* 2 W. Bl. 892. The question always is, Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." Or, as said in *Ætna F. Ins. Co.* v. *Boon,* 95 U. S. 117, 24 L. ed. 395: "The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It

is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster."

It seems well settled that there must be an unbroken connection between the wrongful act and the accident. Thus, where a series of buildings are burned in the same conflagration, it would not be held that the proximate cause of the burning of each particular building was the burning of the preceding one, but the agency that caused the fire. Neither can the proximate cause of an accident be attached to the first of a series of wrongful acts, unless all of the acts are directed to, or, of necessity, must lead to, the culminating event. It cannot, therefore, be successfully charged that the act of appellee in recommending Bloe and Durston for appointment, can constitute the proximate cause. It is entirely disconnected with the disaster. It does not appear that, when this recommendation was made, it was contemplated that these officers would ever be called upon to perform the duties they were engaged in at the time of the accident. Their appointment was not directed to the events connected with the disaster. Besides, the appointment was the executive act of the President, and these officers were available for this cruise because of the act of the President.

This narrows the question down to whether or not appellee was actionably negligent in appointing Bloe and Durston to the command of the vessel. Much greater latitude is allowed an officer of the government in the performance of official duty than would be accorded a private individual. He cannot be held liable for an honest mistake in judgment, no matter how fatal the mistake may prove. The law relating to the liability of officers is well stated in Thompson on Negligence, 2d ed. vol. 1, sec. 588: "Those officers whose duties are of a public or governmental nature are not in general liable for the wrongs of those through whose agency they are obliged to act. Such agents are deemed agents of the public or of the government, and not agents of the superior officer whose orders they receive and obey. This is obviously the rule with regard to military officers, and probably the books disclose no instance of an attempt to make a military commander responsible for a wrong of

his subordinate, unless such wrong was directly traceable to some wrong of his own. Neither is the captain of a war vessel answerable for the damage done by her in running down another vessel, if the mischief happened during the watch of his lieutenant who was on deck and had actual charge of the navigating of the vessel at the time, the captain not being on deck and it not being his duty to be there." (Citing *Nicholson* v. *Mounsey,* 15 East, 384.)

We think the mere selection of Bloe and Durston to command the vessel on this cruise, under the allegations of the declaration, is not sufficient to attach any liability to appellee. The appointment of these officers to the command is the last point at which the declaration connects appellee, either directly or indirectly, with the accident. It fails to charge him with having given any directions whatever as to the manner in which the vessel should be run, or the manner in which the launch should be towed. He was not present when any of the events occurred which led up to the accident. The acts charged upon which it is sought to attach liability are too remote and disconnected from the acts directly alleged as causing the accident to constitute the proximate cause.

There is no theory upon which, under this declaration, appellee can be held liable. The demurrer was therefore properly sustained. The judgment is affirmed, with costs, and it is so ordered.                               *Affirmed.*